COMMONWEALTH vs. HARVEY McGEOGHEGAN
(and fourteen companion cases [1]).

Suffolk.  May 5, 1982. — May 11, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Search and seizure, Roadblock by police. *Search and Seizure,* Automobile, Threshold police inquiry, Roadblock by police. *Motor Vehicle,* Operating under the influence.

Discussion of relevant cases and statement of factors significant in iden-tifying instances where the use of a roadblock by police as a method of discovering drunk drivers is permissible under the Fourth Amendment to the United States Constitution. [139-144]

A judge properly allowed a motion to dismiss criminal complaints on the ground that the evidence which provided the basis for issuance of the complaints was obtained as a result of an unlawful roadblock stop of the defendants' motor vehicles for the purpose of detecting drunk drivers, where undisputed facts failed to establish the presence of a suf-ficient number of police officers at the roadblock, adequate lighting and warning to approaching motorists, and the absence of arbitrari-ness or undue delay. [144-145] NOLAN, J., dissenting.

---

[1] The other defendants are John Mitchell, Richard L. Smith, Herbert Cruikshank, Richard J. Smith, and Robert Kleinberg.

The complaints are as follows:

(a) against McGeoghegan, operating under the influence of intox-icating liquor, driving negligently so as to endanger the public, and possession of a controlled substance.

(b) against Mitchell, possession of a controlled substance, and unlawful drinking of an alcoholic beverage while on a public way.

(c) against Richard L. Smith, unlawful carrying of a knife with a blade in excess of two and one-half inches in violation of a city ordinance, and possession of a controlled substance.

(d) against Cruikshank, operating under the influence of intoxicating liquor, driving negligently so as to endanger the public, and possession of a controlled substance.

(e) against Richard J. Smith, two complaints of possession of a con-trolled substance.

(f) against Kleinberg, operating under the influence of intoxicating liq-uor, driving negligently so as to endanger the public, and operating a motor vehicle on a public way not being duly licensed.

COMPLAINTS received and sworn to in the Chelsea Division of the District Court Department on January 18, 1982.

Motions to dismiss were heard by *Stanziani*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Michael J. Traft*, Assistant District Attorney (*Ellen Fulham*, Assistant District Attorney, with him) for the Commonwealth.

*Jeanne Baker* (*John Reinstein & Stephanie A. Cleverdon* with her for Richard J. Smith, *Dominic J. Paratore* for John Mitchell & *Leonard A. Hanlon* for Herbert Cruikshank also with her).

O'CONNOR, J. In this appeal by the Commonwealth from the dismissal of several criminal complaints, we consider the lawfulness of a roadblock stop of motor vehicles for the purpose of detecting drunk drivers. A District Court judge heard the defendant McGeoghegan's motion to dismiss the complaints against him, and the parties agreed that the judge's rulings on that motion would apply to the complaints against the other defendants as well. McGeoghegan's motion, which states that it was filed by direction of the court, was expressly grounded on the contention that McGeoghegan's motor vehicle was unlawfully stopped. The implied contention is that the evidence which provided the basis for the issuance of the complaints was unlawfully obtained as a result of the stop. After hearing McGeoghegan's motion, the judge dismissed all the complaints against the defendants. The Commonwealth appealed, and we granted the Commonwealth's application for direct appellate review. We affirm the orders dismissing the complaints.

The parties agreed at the hearing on the motion to dismiss that McGeoghegan was in a motor vehicle that had been stopped at a roadblock, that the police asked him for his "papers," that he showed signs of having been drinking and was taken from his vehicle to a nearby van, where he took and failed a breathalyzer test, and that he was arrested and his vehicle was towed away. It was also agreed that the

police had no cause initially to stop McGeoghegan "except that he was one . . . of two hundred or more motorists that were stopped as they passed the roadblock stoppoint."

There are additional undisputed facts. The roadblock was conducted by the Revere police department on North Shore Road and Mills Avenue in that city on the evening of January 15, 1982. This was the result of a plan formulated earlier that day by the police chief and four subordinates. The area of the roadblock was a heavily travelled highway. The main purpose of the roadblock was to detect drunk drivers.

The stopping of McGeoghegan's motor vehicle was a seizure within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and was required by those amendments to be reasonable. *Delaware* v. *Prouse,* 440 U.S. 648, 653-654 (1979). *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 878 (1975). "[T]he reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* The reasonableness standard usually requires that the facts on which an intrusion is based be measured against probable cause, *Carroll* v. *United States,* 267 U.S. 132, 149 (1925), or, in limited instances, on articulable, reasonable suspicion focusing on the affected individual. *United States* v. *Brignoni-Ponce, supra* at 881. See *Delaware* v. *Prouse, supra* at 654-656.

No method of spot checking motor vehicles to discover drunk drivers, in the absence of probable cause or articulable suspicion, has been held by the Supreme Court of the United States to be constitutionally permissible. However, the Supreme Court has not precluded the possibility that a constitutionally permissible spot check method might be devised.

In *Delaware* v. *Prouse, supra,* the Court distinguished random stops of motor vehicles from roadblocks, where "the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much

less likely to be frightened or annoyed by the intrusion." *Id.* at 657, quoting from *United States* v. *Ortiz,* 422 U.S. 891, 895 (1975). *Delaware* v. *Prouse* involved the random stopping of motor vehicles for the purpose of checking drivers' licenses and vehicle registrations. The Court held that such stops were impermissible unless based on specific, articulable facts. However, the Court announced that its "holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." *Id.* at 663. The Court had previously held in *United States* v. *Martinez-Fuerte,* 428 U.S. 543 (1976), that the routine stopping of motor vehicles at a fixed, permanent checkpoint by Federal Border Patrol agents to check for illegal aliens was lawful, noting that motorists using highways with permanent checkpoints are not taken by surprise "as they know, or may obtain knowledge of, the location of the checkpoints and will not be stopped elsewhere." *Id.* at 559.

This court has not previously decided a case in which a question of the lawfulness of a roadblock stop of motor vehicles was involved. However, a somewhat similar question was presented in *Commonwealth* v. *Harris,* 383 Mass. 655 (1981). There we held that a warrantless search of persons entering the Suffolk County Court House was constitutionally permissible when its purpose was to protect that "sensitive facility" from the danger of violence. We noted that the defendant "was not singled out for different treatment from others similarly situated, the search could not have been a surprise to him, and he made no objection. Although elements of coercion were inherent in the situation, the element of voluntariness reduced the intrusiveness of the procedure." We recognized the search as being consensual in the same way as in the airport search cases, citing *McMorris* v. *Alioto,* 567 F.2d 897, 901 (9th Cir. 1978). *Commonwealth* v. *Harris, supra* at 657.

Decisions of two Federal Courts of Appeals and the Supreme Court of Oregon, subsequent to *Delaware* v. *Prouse, supra,* provide some assistance in an identification of factors that are significant to a determination whether a roadblock spot check method of discovering drunk drivers is a sufficiently reasonable accommodation of the public's interest in highway safety with the individual's right to personal security so as to be permissible under the United States Constitution.[2] In *United States* v. *Miller,* 608 F.2d 1089 (5th Cir. 1979), cert. denied, 447 U.S. 926 (1980), officers of the Texas Department of Public Safety set up a routine license and vehicle registration checkpoint adjacent to a Border Patrol checkpoint, a lighted area, on Highway 67 in Texas. All cars travelling in either direction were stopped. The court noted that this was "a procedure apparently approved in *Delaware* v. *Prouse." Id.* at 1093.

In *United States* v. *Prichard,* 645 F.2d 854 (10th Cir.), cert. denied, 454 U.S. 832 (1981), the central issue was whether the search of a Ford Bronco automobile, which resulted in the seizure of cocaine valued at $20,000,000, was lawful. Two New Mexico State police officers, with their supervisor's permission, had established a roadblock at about noon on an interstate highway for the purpose of conducting a routine driver's license and registration check. "The officers testified that it was their intent to stop all westbound vehicles, except for semi-trucks, which had already been stopped at a port of entry. When the cars began to 'pile-up,' however, the officers would wave all of the stopped cars through in order to prevent the situation from becoming unduly hazardous. One officer estimated that they would allow no more than ten cars to

---

[2] Although the Massachusetts Declaration of Rights may afford greater protection to an individual than the protection afforded by the United States Constitution, see, e.g., *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648, 666-667 (1980), *Commonwealth* v. *Ortiz,* 376 Mass. 349, 358 (1978), the same factors are material to a consideration of the constitutionality under either document of a roadblock stop of motor vehicles for the purpose of detecting drunk drivers.

back up before they waved all of the stopped cars on through. After they cleared the area, the officers would begin to stop cars again." *Id.* at 855. It was in this setting that the Ford Bronco was stopped, culminating in the seizure of the cocaine. Relying on the dictum in *Delaware v. Prouse,* the court held that the roadblock stop of the Ford Bronco was lawful. The court reasoned that "[w]hile this may not have been a '100% roadblock' of the type referred to in *Prouse,* it is nonetheless a long way from the selective, single car stop denounced in *Prouse.* In the instant case, the New Mexico State police were attempting to stop all westbound traffic on an interstate highway, insofar as was humanly possible. The decision not to stop trucks was reasonable under the circumstances, because, presumably, they had all been stopped at a port of entry. The purpose of the roadblock, i.e., to check drivers' licenses and car registrations, was a legitimate one. If, in the process of so doing, the officers saw evidence of other crimes, they had the right to take reasonable investigative steps and were not required to close their eyes. See *United States* v. *Merryman,* 630 F.2d 780, 782-785 (10th Cir. 1980). Furthermore, allowing all the stopped cars through when traffic became congested was also reasonable and . . . nonviolative of the rule of *Prouse." United States* v. *Prichard, supra* at 856-857.

*State* v. *Tourtillott,* 289 Or. 845 (1980), cert. denied, 451 U.S. 972 (1981), involved a roadblock, manned by an officer of the Oregon State Police Game Division, to check hunters' compliance with game laws, to check hunting licenses and to gather statistics on hunter success on the opening day of deer hunting season. The roadblock was established on a rural highway, warning signs were placed on the side of the road, and the officer's motor vehicle, "with a sign on its side indicating its ownership," was parked at a right angle to the road. As automobiles approached, the officer, wearing a uniform and a badge, stood in the center of the road and held out his hand to stop approaching motor vehicles. If the car contained older people or others who

did not appear to have been hunting the officer would sometimes permit them to continue after they slowed or stopped. The defendant was stopped, and was discovered to have been driving after revocation of her driver's license. *Id.* at 848-849. The court held that the stop was lawful. The court reasoned that the degree of psychological and physical intrusion occasioned by the stop was "more analogous to that found permissible in *Martinez-Fuerte* than to those in . . . *Prouse*" because all the vehicles were slowed or stopped at the checkpoint. *Id.* at 858. The court reasoned further that, since the checkpoint was established on the first weekend of the hunting season, on an isolated road where hunting was to be expected, it "would be one of the most effective [methods] to meet its goals." *Id.*

Our task is to decide the case before us rather than to proclaim the precise limits within which other roadblocks may be considered to be constitutionally permissible. However, we are well aware of the public's interest in reducing the incidence of drunk driving in a way that is consistent with the important interest of individuals in being free from unreasonable intrusion on their personal security. For this reason, we make some observations that we think are relevant to a consideration of the lawfulness of roadblocks before focusing on the specific roadblock at issue. We, of course, recognize that the United States Supreme Court is the ultimate authority with respect to questions involving the United States Constitution.

For a roadblock to be permissible, it appears that the selection of motor vehicles to be stopped must not be arbitrary, safety must be assured, motorists' inconvenience must be minimized and assurance must be given that the procedure is being conducted pursuant to a plan devised by law enforcement supervisory personnel. While we do not suggest that advance notice is a constitutional necessity, advance publication of the date of an intended roadblock even without announcing its precise location, would have the virtue of reducing surprise, fear, and inconvenience. Such a procedure may achieve a degree of law enforcement and

highway safety that is not reasonably attainable by less intrusive means. Also, while we do not suggest that roadblocks can only be constitutional if prescribed by statute or appropriate governmental regulation, we think that procedures conducted pursuant to such authorizations and standards would be more defensible than would other procedures. [3]

We turn now to the roadblock conducted by the Revere police department on the evening of January 15, 1982, and to the defendants' motions to dismiss. All the evidence against the defendants was obtained as a result of the roadblock. If the roadblock was unlawful, the motions to dismiss were properly allowed. The judge found that the roadblock area was poorly illuminated and unsafe for motorists, that the mechanics of the roadblock were left to the discretion of the officers carrying it out, that the officers used their own discretion in deciding which cars to stop, and that motorists were backed up on the highway for at least two thirds of a mile. Many of these and other findings of the judge are justifiably challenged by the Commonwealth, and we do not rely on them. However, the judge was not required to credit the Commonwealth's evidence, and he made no findings that would support the lawfulness of the roadblock. Since the burden was on the Commonwealth to establish the lawfulness of the roadblock, *Commonwealth* v. *Leone,* 386 Mass. 329, 336 (1982), *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974), the judgments must be affirmed unless the undisputed facts (recited at the outset of this opinion) compel the conclusion that the police procedures were reasonable in the Fourth Amendment sense. They do not. They fail to establish sufficient police presence, and adequate lighting and warning

---

[3] The Supreme Court and this court have recognized that in the absence of consent or exigent circumstances a warrantless inspection of pervasively regulated businesses may proceed without probable cause or articulable suspicion only when specifically authorized by an appropriate statute. *United States* v. *Biswell,* 406 U.S. 311, 317 (1972). *Commonwealth* v. *Accaputo,* 380 Mass. 435, 438-439 (1980).

to approaching motorists. They do not establish lack of ar-
bitrariness and undue delay. We need go no further. The
orders must be affirmed.

*So ordered.*


NOLAN, J. (dissenting). I dissent. Many of the judge's
findings on factors which are crucial to a proper roadblock
are unsupported by the evidence. I believe that the Com-
monwealth satisfied its burden of establishing the
lawfulness of the roadblock in this case. *Commonwealth* v.
*Antobenedetto,* 366 Mass. 51, 57 (1974).

If illegal alien traffic and smuggling are sufficiently
serious public problems to justify the Border Patrol in stop-
ping vehicles for brief questioning of their occupants at a
specific checkpoint despite the absence of articulable facts
to justify the stopping of a motor vehicle (see *United States*
v. *Martinez-Fuerte,* 428 U.S. 543 [1976]), the "carnage
caused by drunk drivers" (*South Dakota* v. *Neville,* 459 U.S.
553, 558 [1983]) is even more serious and widespread.

The guidelines which the court has delineated today ap-
pear to have been met in this case. There was testimony
that the stopping of motor vehicles was not arbitrary, all
vehicles were stopped, and that hazard and inconvenience
to motorists were at a minimum. There were visible signs
of the roadblock and the police did not use their own discre-
tion as to the particular vehicle to be stopped.

On balance, the inoffensive intrusion of a systematic stop-
ping of all vehicles at a fixed point is a small price to pay for
efforts to reduce the frightening slaughter on our highways
caused by driving under the influence of liquor.