## Commonwealth v. Jackson

*John Mahoney,* for the Commonwealth.
*Joseph Green,* for defendant.

SMITH, *J.,* February 9, 1984—We have before us an issue of first impression in this Commonwealth: May the police, without any evidence that the Vehicle Code has been violated, set up a roadblock, stopping all vehicles, to seek out those who are driving under the influence of alcohol? After due deliberation, and upon the following reasoning, we conclude they may not.

On the evening of July 9, through the early morning hours of July 10, 1983, members of the Pennsylvania State Police were engaged in a federally-funded operation known as the "DUI Counter Measures Program." The purpose of this program, as the name implies, is to seek out those who are driving under the influence of alcohol and/or drugs. To that end a roadblock was established and motorists were interdicted and directed to one of five stations, where they were asked to produce driver's li-

cense, vehicle registration and insurance cards; simultaneously the police observed the operators for the various indicia of intoxication. If the operator appeared to be a possible offender, he would be asked to submit to "field tests" and upon failure of same, be removed to the Avondale Barracks for intoxilizer testing. Defendant herein was stopped and failed both field and intoxilizer testing.

The defense has challenged this procedure and alleges violations of the Fourth, Fifth, Sixth and Fifteenth Amendments of the United States Constitution and Sections 8 and 9 of Articles I of the Constitution of the Commonwealth of Pennsylvania; he further claims a violation of the Commonwealth's Vehicle Code.

Before addressing issues of constitutional dimension, we look first to the Vehicle Code of Pennsylvania to determine whether it precludes enforcement activity of this kind.

Our Vehicle Code in 75 Pa. C.S. §6308(a) permits police officers to stop operators and check their registration card, driver's license and insurance cards. This stop however may only be made upon a reasonable belief that some provision of the Vehicle Code has been violated.[1] Although the legislature has

---

1. Section 6308 deals with Investigation by Police Officers. Subsection (a) reads:

"(a) Duty of Operator or Pedestrian. — The operator of any vehicle or any pedestrian *reasonably believed to have violated* any provision of this title shall stop upon request or signal of any police officer and shall, upon request, exhibit a registration card, driver's license and proof of insurance, or other means of identification if a pedestrian or driver of a pedalcycle, and shall write their name in the presence of the police if so required for the purpose of establishing identity." 75 Pa. C.S. §6308 (1977). (Emphasis supplied.)

We further note that subsection (b) permits the stopping of *vehicles without a reasonable belief* that a violation has taken

amended the Vehicle Code several times this statutory guarantee of uninterrupted travel for the law abiding citizen has remained unchanged. Indeed the legislature recognizing the menace of the drunk driver, has enacted a number of amendments designed to apprehend, convict and impose mandatory sentences on those persons who drive while intoxicated.[2] They have authorized arrests for driving under the influence regardless of whether the alleged violation was committed in the presence of the officer, but have required such warrantless arrests to be based on probable cause. 75 Pa. C.S. §3731(c). They have required reasonable suspicion before police may invite a motorist to submit to pre-arrest breath testing[3] and reasonable grounds to believe the operator is intoxicated before chemical tests of his breath, blood or urine can occur.[4] As a result we conclude the legislature is indeed sensi-

---

place, but then the inspection is only of the vehicle and not of the operator. (Emphasis supplied.)

That section reads:

"(b) Authority of Police Officer. — Any police officer may stop a vehicle, upon request or signal, for the purpose of inspecting the vehicle as to its equipment and operation, or vehicle identification number or engine number, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." 75 Pa. C.S. §6708(b) (1977).

Both 6508 and Section 4981 permit the weighing and measurement of vehicles without probable cause, but here again, the stop is in the nature of a vehicle inspection, not an inspection of the operator and its purpose is regulatory not investigatory.

2. See general Act of December 15, 1982, P. L. 1268, No. 289 §1 et. seq.

3. Act of December 15, 1982, P. L. 1268, No. 289, §5, 75 Pa. C.S. §1547(K).

4. 75 Pa. C.S. §1547(a) (1977).

tive to the "problem", but has not yet chosen to permit an arbitrary blocking of the Commonwealth's highways to seek out intoxicated motorists. Our anaylsis of the code therefore establishes that before a motorist can be stopped by police they must have a reasonable belief that the Vehicle Code has been violated. After a lawful stop is made they must have a reasonable suspicion that the operator is driving under the influence before requesting a pre-arrest breath test and reasonable grounds before requiring him to submit to a chemical test.

As a result we are compelled to find that the stopping of defendant's vehicle was in violation of section 6308 of our Vehicle Code, and that his arrest thereafter was unlawful; accordingly, his application to suppress all evidence acquired as a result of this "stop" must be granted.

We might conclude our opinion at this point, but mindful of the Orwellian year in which we write, we are compelled to identify the individual freedoms and public safety issues which compete when the public's right of free passage upon our public highways is interrupted.

"In Pennsylvania, the grim alcohol related traffic accident statistics for 1982 are: 800 people killed in 684 traffic accidents; 19,499 people seriously injured in 12,508 accidents . . ." Commonwealth v. Mikulan, Pa. , 470 A.2d 1339 (1983). Nationwide 25,000 deaths are said to be alcohol related. See Mackey v. Montrym, 443 U.S. 1 (1979).

Recognizing as we do that the most important function of government is the exercise of the police power to preserve public health, safety and welfare, clearly the legislature may limit the enjoyment of our personal liberty and property if they so elect. Gambone v. Commonwealth, 375 Pa. 547, 550-51, 101 A.2d 634 (1954); Lambert v. California, 355

U. S. 225, 228 (1957). Indeed our Commonwealth's Supreme Court recognizes that the General Assembly has a compelling interest in protecting the health and safety of the travellers upon our highways and roads against the ravage caused by drunken drivers. Commonwealth v. Mikulan, supra. If our legislature should see fit to amend Section 6308 and permit "DUI roadblocks", which would appear to be valid under the U. S. Constitution (See Delaware v. Prouse, 440 U.S. 648, 59 L.Ed. 2d 660, 99 S. Ct. 1391 [1979]), there lies within such allowance the potential for substantial public inconvenience, absent clearly articulated protocols.[5] Since there be fifty-three (53) full and part-time police departments in this country, it is not unlikely that each might see fit to "screen" motorists in a effort to seek out offenders; indeed some departments have the personnel to conduct multiple roadblocks simultaneously.[6] In the event of such activities the resultant inconvenience to and possible harassment of the law abiding citizen would be most burdensome. We are relieved for now that this delicate balancing of free passage versus public health lies with the legislature. Section 6308 of our Vehicle Code pres-

---

5. See Commonwealth v. McGeoghegan, 389 Mass. 137, 449 N.E.2d 349 (1983). For a roadblock to be permissible, it appears that the selection of motor vehicles to be stopped must not be arbitrary, safety must be assured, motorists' inconvenience must be minimized, and assurance must be given that the procedure is being conducted pursuant to a plan devised by law enforcement supervisory personnel.

6. Act of December 15, 1982, P. L. 1268, No. 289, § 14, 42 Pa. C.S. § 3573 (3). We note a municipality has a substantial financial incentive for strict enforcement since $150 of the mandatory $300 fine imposed upon one convicted of driving under the influence is returned to the arresting municipality.

ently precludes programs such as Operation Counter Measures within this Commonwealth.

Accordingly, we enter the following

## ORDER

The suppression of all evidence acquired as a result of the vehicular stop of defendant's vehicle.