COMMONWEALTH *vs.* SANDRA M. ANDERSON.

Plymouth. September 11, 1989. - December 19, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Search and seizure, Roadblock by police. *Search and Seizure*, Automobile, Threshold policy inquiry, Roadblock by police. *Motor Vehicle*, Operating under the influence.

At the hearing on a motion to suppress evidence obtained during a drunk-driving roadblock stop of defendant's automobile, the judge's findings warranted his conclusion that, in extending the roadblock hours beyond 2 A.M., the police deviated from the specific guidelines which were in operation for the roadblock. [345]

A police roadblock for the detection of drunk drivers, the hours of which were extended from 2 A.M. to 2:30 A.M. by the police supervisor in charge on the scene in disregard of the specific guidelines under which the roadblock was being conducted, was violative of the rights of a motorist seized fifteen minutes after the roadblock was supposed to have ended, as secured to her under the Fourth and Fourteenth Amendments to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. [345-351] LIACOS, C.J., concurring. NOLAN, J., dissenting.

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on June 15, 1987.

On transfer to the jury session of the Wareham Division, a pretrial motion to suppress evidence was heard by *Paul E. Ryan*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kathleen A. Reagan*, Assistant District Attorney, for the Commonwealth.

*John M. Corey* for the defendant.

LYNCH, J. The Commonwealth appeals under Mass. R. Crim. P. 15 (a) (2), 378 Mass. 882 (1979), from the order of

a District Court judge suppressing evidence obtained during a drunk-driving roadblock stop of the defendant's automobile. The judge ruled that, in extending the roadblock beyond 2 A.M., the State police deviated from the specific plan which was in operation for this roadblock. In doing so, the judge concluded, the police violated the defendant's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and art. 14 of the Massachusetts Declaration of Rights. We transferred the case here on our own motion and now affirm.

On the night of June 12 and June 13, 1987, the State police planned and executed a roadblock for detecting drunk drivers along a stretch of Route 18 in Abington. The defendant, Sandra M. Anderson, was arrested at the Abington roadblock at 2:15 A.M. — fifteen minutes after the termination of the roadblock authorized by State police troop commander Charles F. Henderson's plan. The various State police guidelines[1] under which the roadblock was being conducted gave officers on the scene no discretion to alter any of the details of the operations.[2] Under the procedure, sole authority for extending a roadblock beyond a two-hour duration was in the hands of the troop commander.[3] However, the judge found that Lieutenant Edward H. Begin, the supervisor in charge on the scene, extended the roadblock from 2 A.M. to 2:30 A.M.

The motion judge concluded that by extending the roadblock hours the officer at the scene varied from the specific

[1]The Commonwealth's "guidelines" governing drunk-driving roadblocks consist of the Department of Public Safety's Drunk Driving Roadblock Enforcement Procedure and Policy; the State police troop commander's written plan for each particular roadblock, and the written duty assignment sheets delegating specific tasks to each officer participating in the roadblock. We refer to them collectively as guidelines.

[2]With respect to the other main aspects of the roadblock's execution — lighting, notice to the public, which cars and how many were stopped prior to 2 A.M., care for the safety of the public and manner of addressing drivers at each stop — the judge found this standard was met.

[3]Section 10(c)(2) of the procedure states: "Duration of the roadblock will not exceed two hours unless the troop commander orders otherwise."

plan for the roadblock in question and in so doing abridged the standards for a permissible roadblock we articulated in *Commonwealth* v. *McGeoghegan,* 389 Mass. 137 (1983).

1. *Consistency of the rulings.* The Commonwealth contends that the judge's findings did not warrant his conclusion that the roadblock guidelines were not followed. We do not agree. The guidelines provided that a roadblock not exceed two hours in duration unless the troop commander orders otherwise. The guidelines also provided that the procedure to be followed must be in writing and disseminated in advance. We conclude, therefore, that if the troop commander wishes to extend the duration of the roadblock, the guidelines require that he do so in writing and in advance. Even if we were to interpret the guidelines as permitting oral changes in duration on orders of the troop commander, our decision would not change. There was no evidence that the troop commander ordered the hours extended.[4]

It is clear, therefore, that the judge's ruling that the police failed to comply with the established procedure is unassailable. We turn now to the effect of this failure on the constitutionality of the defendant's seizure.

2. *Constitutional standards.* It is beyond dispute, as the Commonwealth acknowledges, that the stopping of Anderson's automobile at a roadblock for a driver sobriety check is a "seizure," under both the Fourth and Fourteenth Amendments to the United States Constitution, and art. 14 of the Massachusetts Declaration of Rights. *Commonwealth* v.

---

[4]The only evidence offered by the Commonwealth on the issue whether Lieutenant Begin, the officer in charge, was authorized to extend the duration of the roadblock from 2 A.M. to 2:30 A.M. was the oral testimony of the lieutenant himself. Over the course of his testimony the officer gave three different accounts of how the order to continue the Abington roadblock past 2 A.M. came to be given. He testified first, that he had discretion to order roadblocks to continue beyond the end time stated in the written plans, and that he regularly ordered such deviations from plans; second, that the troop commander contacted him by telephone before the start of this roadblock and authorized him to extend the roadblock as circumstances warranted; and finally, that the troop commander himself in that phone call authorized an extension of the roadblock to 2:30 A.M.

*Shields*, 402 Mass. 162, 164 (1988). *Delaware* v. *Prouse*, 440 U.S. 648, 653 (1979). In order to pass muster under both constitutional provisions, such a seizure must be "reasonable." *Id*.

Decisions of this court and of the Supreme Court establish that, in deciding whether a seizure is "reasonable," we balance the public interest against the individual's right to personal security free from arbitrary interference by law enforcement officials. *Commonwealth* v. *Trumble*, 396 Mass. 81, 86 (1985). *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 878 (1975). That balance in most cases takes its meaning from the warrant clause. "It is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' " *United States* v. *Ross*, 456 U.S. 798, 825 (1982), quoting *Katz* v. *United States*, 389 U.S. 347, 351 (1967). Even in the "exceptional" cases where a neutral and detached magistrate has not made a finding of probable cause, *Delaware* v. *Prouse*, *supra* at 654 n.11, search or seizure by the police must usually be based on the existence of facts which would allow for such a determination in order to be "reasonable." *California* v. *Carney*, 471 U.S. 386, 394 (1985) (while warrant was not necessary to search motor home under the "automobile exception," to meet reasonableness standard, "the search otherwise [must be such] as the magistrate could authorize"). Even in cases where "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat" has been held to make the warrant exception and probable cause standard too exacting for practical purposes, the police have been required to "point to specific and articulable facts" in order to render a search or seizure "reasonable" by the Fourth Amendment standards. *Terry* v. *Ohio*, 392 U.S. 1, 20-21 (1968).

If "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of . . . Fourth Amendment jurisprudence," *id*. at 21 n.18, then

the further exception from usual Fourth Amendment demands that has been made to accommodate fixed roadblocks for detection of illegal aliens, *United States* v. *Martinez-Fuerte*, 428 U.S. 543 (1976), and drunk drivers, *Commonwealth* v. *McGeoghegan*, 389 Mass. 137 (1983), is rather exceptional and very limited. This court has carved a "sui generis" exception for the enforcement of G. L. c. 90, § 24. *Commonwealth* v. *Shields, supra* at 167. The court has done so on the grounds that a "reasonable" roadblock involves a "minimal" State intrusion upon the reduced privacy of drivers, one that is in any case outweighed by the strong public interest in reducing the carnage caused by drunk drivers. *Commonwealth* v. *Trumble, supra* at 86.

In order to assure that a roadblock seizure of a citizen without even individualized suspicion is "reasonable" under the Fourth Amendment and art. 14 of the Declaration of Rights, the court has demanded that the roadblock meet standard, neutral guidelines, and be conducted pursuant to a plan devised in advance by law enforcement supervisory personnel. *Commonwealth* v. *McGeoghegan, supra* at 143-144. *Commonwealth* v. *Amaral*, 398 Mass. 98, 99-100 (1986).[5] This requirement is meant not only to assure the public's safety and to minimize the intimidation and surprise a driver may feel upon being asked to stop for no suspicious behavior on his or her part. More importantly, it also aims to remove the invasion of the driver's reasonable expectation of privacy from "the discretion of the official in the field." *Commonwealth* v. *Shields, supra* at 165, quoting *Camara* v. *Municipal Court of San Francisco*, 387 U.S. 523, 532 (1967).

*Commonwealth* v. *Trumble, supra*, involved the very same Department of Public Safety and State police regulatory system under which the Abington roadblock of June 12 and

---

[5]In the circumstances of an inventory search, where there is some probable cause or articulable suspicion for the original State law enforcement intrusion upon a citizen's privacy, the court has required written, standard police policies and procedures for "reasonableness," and has held a search in violation of those standard policies to abridge at least art. 14. *Commonwealth* v. *Bishop*, 402 Mass. 449 (1988).

June 13, 1987, was planned to operate. These guidelines, the judge concluded, were "entirely responsive" to the "substitute" standard for constitutional "reasonableness" in the unique roadblock seizure context that we had articulated in *McGeoghegan. Commonwealth* v. *Trumble, supra* at 91. Having found "nothing" in the statement of agreed facts of how that particular roadblock was carried out "to indicate that the guidelines were not carefully followed," *id.*, the court ruled the roadblock seizure to be "reasonable." Since *Trumble,* the constitutionality of such roadblocks under the Fourth and Fourteenth Amendments and under the adequate and independent State constitutional ground of arts. 12 and 14 has been measured by the officers' compliance with these guidelines. See *Commonwealth* v. *Shields, supra* at 164-165 ("where the Commonwealth shows a roadblock employed to enforce c. 90, § 24, was operated in accordance with the established guidelines, the accompanying seizures, although not conducted on the basis of individualized suspicion, are reasonable under the Fourth Amendment and art. 14"); *Commonwealth* v. *Amaral, supra* at 100 ("roadblocks stand or fall based on some set of neutral criteria governing the officers in the field," quoting *State* v. *Jones,* 483 So. 2d 433, 438 [Fla. 1986], in which that court required a written set of uniform guidelines be followed to render a roadblock stop constitutional).

Once the Department of Public Safety and the State police have adopted such standard, written guidelines for the conduct of roadblocks, which have been accepted as a sufficient substitute for the usual Fourth Amendment "reasonableness" demands, it follows that the Commonwealth must carefully comply with them. In order that the privacy interests of the motoring public under the Fourth Amendment and art. 14 be given fair weight in the unique balance that has been struck in favor of roadblock stops without individualized suspicion, it is imperative that the Commonwealth follow its own rules for meeting what the court has recognized as a sui generis interpretation of the reasonableness requirement. We note

that the roadblock guidelines purport to hold law enforcement officers to a standard of strict compliance.[6]

The Commonwealth argues here that our constitutional standard for a "reasonable" roadblock seizure is one of "substantial compliance,"[7] allowing for reasonable deviations by police in conducting a given roadblock for any number of practical factors that might arise on a given evening. It contends therefore that the motion judge erred in holding that the extension of the Abington roadblock beyond the time limit delineated in the written plan rendered the roadblock seizure of the defendant unreasonable. We disagree.

Adherence to a neutrally devised, preplanned blueprint in order to eliminate arbitrariness and discretion has been this court's principal prerequisite for abandoning the requirement of individualized suspicion in roadblock stops. *Commonwealth* v. *Shields,* supra at 165. In *Commonwealth* v. *Amaral, supra* at 100, we noted with approval the position of other courts that control over the discretion of officers in the field is the key constitutional requirement. *People* v. *Bartley,* 109 Ill. 2d 273, 289 (1985), cert. denied sub nom. *Bartley* v. *Illinois,* 475 U.S. 1068 (1986). In *Commonwealth* v. *Trumble, supra* at 90, it was stressed that the officers at the scene were instructed that no deviation from the procedures set forth in the guidelines would be permitted. In *Common-*

---

[6]The written State police duty assignment sheets distributed prior to the execution of a roadblock to the officers who will be participating state that "compliance with the following orders for each post will be strictly observed." In particular, part of the duties of the officer in charge of the detail is to insure "that strict compliance with written Policy and Procedure, and the Guidelines established by the Commissioner of Public Safety be adhered to." Initial point officers in charge are required to "insure that strict compliance with written Policy, Procedure and Guidelines is maintained."

[7]The Commonwealth draws this language from the wording of the certified questions posed to us in *Commonwealth* v. *Trumble, supra* at 83, where we were asked whether the roadblock at issue was "executed in substantial compliance with the guidelines promulgated by the Secretary of Public Safety." As we have already observed, *supra,* in *Trumble* there was no departure at all from (and hence, strict compliance with) the guidelines for executing roadblocks.

*wealth* v. *McGeoghegan, supra* at 143, we stated that, in a constitutionally reasonable roadblock, "assurance must be given that the procedure is being conducted pursuant to a plan devised by law enforcement supervisory personnel." To allow the Commonwealth to do anything short of complying in full with its own guidelines would inject an element of discretion into the roadblock procedures and thus undercut the very foundation upon which the roadblock seizure is constitutionally justified.

This court has also specifically pointed to the importance of the requirement that the "roadblock be planned in advance by supervisory personnel [and such] plans must include 'date, location, *time*, *duration*, and set patterns of cars to be stopped' " (emphasis added). *Commonwealth* v. *Trumble, supra* at 89. As we have noted, the department's own procedure requires that the plans be in writing and disseminated prior to implementation. See section 5 of the procedure. We conclude, therefore, that the Commonwealth must adhere to the requirements of its own guidelines for establishing the duration of a roadblock in order that the possibility of arbitrariness and discretion of the officers in the field be eliminated.[8]

Finally, we are not convinced it is accurate to describe the seizure of this defendant fifteen minutes after a roadblock was supposed to have ended as having "substantially complied" with the Commonwealth's roadblock guidelines. The very fact that the Commonwealth can assume, for argument's sake, that the extension of the roadblock was unauthorized, and then dismiss as insubstantial this deviation from its own guidelines underscores further the need for a standard more meaningful than "substantial compliance" to protect constitutional rights.

The Commonwealth argues that, even if the continuation of the Abington roadblock past 2 A.M. had been unautho-

_____

[8]Since this case was argued, the Appeals Court decided *Commonwealth* v. *Cameron*, 27 Mass. App. Ct. 861 (1989). To the extent that the views in *Cameron* are inconsistent with those expressed here, we decline to follow them.

rized, the motion judge's findings that all other aspects of guidelines were adhered to means the police substantially complied with their written orders. The fact of the matter is that, but for the order to extend the roadblock, Sandra Anderson could not have been lawfully seized without probable cause as she drove along Route 18 at 2:15 A.M. The "insubstantial" deviation of a fifteen to thirty minute extension in duration was actually the difference between *a* roadblock — and the sui generis departure from the limits on the Commonwealth's ability to intrude on a driver's privacy it represents — and *no* roadblock. If such a deviation was unauthorized, then we have a case not of "substantial compliance" with official guidelines and constitutional demands, but of no compliance at all.

Since the Commonwealth's guidelines regulating roadblocks have been held to supply the "reasonableness" in these seizures that lack the usual probable cause or individualized suspicion requirements which ordinarily safeguard citizens from arbitrary government intrusion, we believe the fairest course is to require the Commonwealth to follow its own rules.

The judge's allowance of the defendant's motion to suppress is affirmed.

*So ordered.*

LIACOS, C.J. (concurring). I write separately to reiterate my concern that this court, when faced with a challenge to an automobile roadblock, has allowed itself to be drawn away from the consideration of basic constitutional principles regarding search and seizure law. *Commonwealth* v. *Shields*, 402 Mass. 162, 169 (1988) (Liacos, J., dissenting). Rather than assess whether a roadblock seizure is permissible according to the traditional considerations of probable cause or reasonable and articulable suspicion, this court has chosen to engage in a balancing of the public interest involved in a drunk-driving roadblock against an individual's right to be

free from arbitrary interference with his personal security. *Id.* at 172. See *Commonwealth* v. *Trumble*, 396 Mass. 81, 86 (1985). In the process, this court has lost sight of the "fundamental principles of the jurisprudence of search and seizure law under both Federal and State Constitutions," *Shields, supra* at 169, thereby putting at risk an individual's right to be free from unreasonable searches and seizures. It is my opinion that we should refocus the roadblock debate and base our decisions as to the reasonableness of roadblock seizures on the existence of probable cause and reasonable or articulable suspicion. However, for the purposes of the present case, I accept, as I must, the court's current analysis of roadblock seizures.

I am gratified by the court's insistence on strict adherence by the law enforcement authorities to a roadblock plan devised in advance of the roadblock. This standard of compliance will provide some minimal protection to an individual's right to personal security, while the reasonable substantial compliance standard urged by the dissent would increase greatly the risk of unreasonable seizures by individual police officers in the field. Indeed, under the reasonable substantial compliance standard as envisaged by the dissent, police officers at the scene could choose to continue a roadblock indefinitely, regardless of the duration set down in the roadblock plan, so long as the extended roadblock was operated in the same manner as it had been for the period of time authorized by the plan. Such a standard goes too far in subjecting a motorist's right of personal security to the discretion of the official in the field. *Commonwealth* v. *Shields, supra* at 165. Accordingly, I concur.

NOLAN, J. (dissenting). I dissent. In reaching its result, the court elevates form to a triumphant height, leaving substance to stare upward in utter disbelief. The substantive issue is not whether the police strictly complied with the guidelines they devised, but whether the deviation from the guidelines was of

such a nature or degree that the roadblock, as implemented, was "unreasonable."

The deviation in this case was "de minimis." It is difficult to understand how the State trooper's failure to obtain permission from the troop commander to extend the roadblock a half hour somehow violated the defendant's right to be free from unreasonable searches and seizures. The roadblock was in effect pursuant to a devised plan that was not arbitrary and which assured motorists' safety and convenience. The fact that the roadblock lasted longer than authorized does not somehow change the nature of the roadblock. In this case, the State police established a roadblock in which they: (1) did not arbitrarily stop cars; (2) observed the public safety at all times; (3) performed in such a manner that the stops were brief, and took only seconds; and (4) ensured that no motorist was inconvenienced during the roadblock. See *Commonwealth* v. *McGeoghegan*, 389 Mass. 137, 143 (1983). Further, the State police devised a plan which enabled them to carry out the roadblock in the reasonable manner outlined above. The State police substantially complied with this plan except that the roadblock was in place a half hour longer than the plan authorized. The roadblock in place at 2:15 A.M., when the defendant's vehicle was stopped, however, was the same roadblock that had been in place at 2 A.M. There is no evidence that the State police treated motorists stopped at 2:15 A.M. any differently than they had treated motorists stopped at 2 A.M. Nevertheless, those intoxicated motorists who drove by the roadblock after 2 A.M. are shielded from prosecution simply by their late arrival. The court's application of strict compliance in this case is superficial and woodenly technical. Unlike Cinderella's coach, the roadblock did not turn into a pumpkin at 2 A.M. The nature of the roadblock and the plan under which it was implemented remained the same and the drunk drivers who were driving at 2:15 A.M. were as blameworthy as those who were driving fifteen minutes earlier. They should be held just as responsible.