## COMMONWEALTH *vs.* HOLLY A. AIVANO
## (and a companion case[1]).

No. 11-P-688.

Hampden. December 9, 2011. - February 3, 2012.

Present: GREEN, VUONO, & MILKEY, JJ.

*Constitutional Law,* Search and seizure, Roadblock by police, Investigatory stop. *Search and Seizure,* Motor vehicle, Roadblock by police, Threshold police inquiry. *Threshold Police Inquiry. Motor Vehicle,* Operating under the influence. *Practice, Criminal,* Motion to suppress.

A District Court judge erred in allowing the criminal defendants' motions to suppress evidence obtained incident to roadside stops conducted at a sobriety checkpoint, where a discrepancy in a press release regarding the legal character of the way on which the roadblock was conducted did not implicate any concern of constitutional dimension, and where there was no indication that the discrepancy otherwise derogated in any material way from the prudential purposes of such public statements. [249-251]

COMPLAINTS received and sworn to in the Springfield Division of the District Court Department on August 30, 2010.

Pretrial motions to suppress evidence were heard by *James B. McElroy*, J.

Applications for leave to prosecute interlocutory appeals were allowed by *Ralph D. Gants*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeals were reported by him to the Appeals Court.

*Bethany C. Lynch*, Assistant District Attorney, for the Commonwealth.

*Daniel M. Shea* for Holly A. Aivano.

*Andrew G. Bombardier* for Peter J. Cosumano.

GREEN, J. The Commonwealth appeals from two orders suppressing evidence obtained from the defendants incident to roadside stops conducted at a sobriety checkpoint during the

---

[1]Commonwealth *vs.* Peter J. Cosumano.

early morning hours of August 29, 2010. A judge of the District
Court allowed the defendants' motions to suppress because the
checkpoint was conducted on West Columbus Avenue, a munici-
pal public way in Springfield (and not a State highway), but the
press release issued by the State police announcing the checkpoint
stated that it would occur on a "Secondary State Highway." We
reverse the orders of suppression because the deviation between
the location of the checkpoint and its description in the press
release did not implicate any concern of constitutional dimen-
sion, and because there is no indication that the discrepancy
otherwise derogated in any material way from the prudential
purposes the Supreme Judicial Court has identified in recom-
mending the issuance of such public statements. See *Com-
monwealth* v. *McGeoghegan*, 389 Mass. 137, 143-144 (1983).

*Background.* On August 19, 2010, the State police office of
media relations issued the following press release:

> "Colonel Marian J. McGovern, Superintendent of the Mas-
> sachusetts State Police, announced that a 'Sobriety
> Checkpoint' will be implemented by the Massachusetts
> State Police on a Secondary State Highway. The purpose
> is to further educate the motoring public and strengthen
> the public's awareness to the need of detecting and remov-
> ing those motorists who operate under the influence of
> alcohol and/or drugs from our roadways. It will be oper-
> ated during varied hours, the selection of vehicles will not
> be arbitrary, safety will be assured, and any inconveniences
> to motorists will be minimized with advance notice to
> reduce fear and anxiety.
>
> "  . . .
>
> "A 'SOBRIETY CHECKPOINT' WILL BE HELD IN
> THE COUNTY LISTED BELOW:
>
> "COUNTY:              DATE:
>
> "Hampden             Saturday August 28, 2010 into
>                      Sunday August 29, 2010."[2]

During the early morning hours of August 29, 2010, each of

---

[2]The specific county and date information appeared in bold type.

the defendants was stopped at a sobriety checkpoint conducted on West Columbus Avenue in Springfield. West Columbus Avenue is not a State highway (nor a secondary State highway). As the result of the stops, each defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24(1)(*a*)(1). After the defendants each moved successfully to suppress evidence obtained incident to the stops, based on the discrepancy between the description of the checkpoint location contained in the press release and the nature of the street on which it was conducted, the Commonwealth appealed.[3]

*Discussion.* "It is . . . beyond question that the stop of a vehicle at a fixed roadblock, however brief, constitutes a warrantless seizure of that vehicle and its driver without individualized suspicion under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights." *Commonwealth* v. *Murphy*, 454 Mass. 318, 322 (2009). "[F]or sobriety checkpoints to be reasonable under the Fourth Amendment and art. 14, 'the selection of motor vehicles to be stopped must not be arbitrary, safety must be assured, motorists' inconvenience must be minimized, and assurance must be given that the procedure is being conducted pursuant to a plan devised by law enforcement supervisory personnel.' " *Id.* at 323, quoting from *McGeoghegan*, 389 Mass. at 143. "Adherence to a neutrally devised, preplanned blueprint in order to eliminate arbitrariness and discretion has been [the Supreme Judicial Court's] principal prerequisite for abandoning the requirement of individualized suspicion in roadblock stops." *Commonwealth* v. *Anderson*, 406 Mass. 343, 349 (1989). Indeed, the court has insisted on strict adherence to the provisions of the predetermined plan "in order that the possibility of arbitrariness and discretion of the officers in the field be eliminated." *Id.* at 350 (requiring suppression of evidence obtained at sobriety checkpoint fifteen to thirty minutes after predetermined plan called for checkpoint to terminate). While there is no constitutional necessity that advance notice of an intended roadblock be given, "advance publication of the date of an intended roadblock, even without

---

[3]The defendants' motions sought both to suppress the evidence so obtained, and to dismiss the charges; the motions were endorsed, "Allowed."

announcing its precise location, would have the virtue of reducing surprise, fear, and inconvenience." *McGeoghegan, supra.*

In the present case, the defendants acknowledge that the roadblock was conducted pursuant to a predetermined plan and, other than the discrepancy between the legal character of West Columbus Avenue as a municipal street and the generic description of the roadblock location in the press release as a secondary State highway, do not contend that the location of the roadblock, or the manner in which it was conducted, failed in any manner to adhere to that plan.[4]

We are unpersuaded that the discrepancy cited by the defendants between the information contained in the press release announcing the roadblock and the nature of the street on which it was conducted warrants suppression of the evidence. As we have observed, *supra*, the linchpin for determining constitutionality of a roadblock is the use of a predetermined plan, developed by supervisory law enforcement personnel, to eliminate the exercise of discretion by law enforcement personnel in the field. The defendants do not contend that the roadblock was not conducted in the location established by the plan (or that the conduct of the roadblock otherwise deviated from the plan). The lone discrepancy cited by the defendants was between the press release and both the plan and the roadblock. Nothing about the discrepancy in the press release introduces an opportunity for discretionary departure by law enforcement in the field from the dictates of the plan. Moreover, as observed in *McGeoghegan, supra*, the prior announcement of a planned roadblock — in other words, the press release — is not a matter of constitutional necessity; it is simply a prudential device to reduce fear and surprise in the motoring public.

The defendants' suggestions that constitutional requirements are violated when a press release contains inaccurate information concerning the location of a planned roadblock ring hollow. The Supreme Judicial Court has made it clear that the actual

---

[4]The plan itself is not in the record. In the memoranda submitted in support of their respective motions to suppress and dismiss, both defendants averred similarly that "the State Police established guidelines for this roadblock entitled, 'Operational Plans and Directives, West Columbus Ave., Springfield, MA. August 28 and 29, 2010.' "

location of a planned roadblock need not be announced in advance, and nothing in the record of the present case suggests either that the reference in the press release to a "Secondary State Highway" was purposely designed to mislead the public or that it otherwise derogated from the objectives articulated in support of giving prior announcement of planned roadblocks. See *ibid.*

In sum, though strict adherence to a predetermined plan for conduct of a roadside sobriety checkpoint is constitutionally required, a minor discrepancy in details contained in a press release announcing an intention to conduct such a roadblock will not render the roadblock constitutionally infirm, at least in circumstances where the discrepancy is not shown to be purposely designed to mislead the public and where it involves information concerning the roadblock about which the public is not constitutionally entitled to be informed in advance.

The orders allowing the defendants' motions to suppress are reversed, and new orders shall enter denying the motions.

*So ordered.*