COMMONWEALTH *vs.* HECTOR RODRIGUEZ.

Hampden. September 13, 1999. - January 18, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Constitutional Law,* Search and seizure, Roadblock by police. *Search and Seizure,* Automobile, Roadblock by police. *Controlled Substances.*

Discussion of basic principles of search and seizure jurisprudence [579-580], and discussion of the narrow public purpose exception to the warrant requirement for sobriety checkpoint roadblocks [580-582].

Discussion of the public safety considerations underlying a roadblock for the interdiction of contraband, specifically drugs. [582-584]

A drug interdiction roadblock set up by law enforcement officials for the purpose of searching for evidence of drug trafficking and other contraband violated art. 14 of the Massachusetts Declaration of Rights, where stops of motorists were without probable cause or reasonable suspicion and where there was no emergency or imminent threat to the lives and safety of the public. [584-586]

COMPLAINT received and sworn to in the Holyoke Division of the District Court Department on November 24, 1997.

A pretrial motion to suppress evidence was heard by *Nancy Dusek-Gomez,* J.

An application for an interlocutory appeal was allowed by *Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

*Geri Laventis* for the defendant.

*Carol A. Donovan,* Committee for Public Counsel Services, & *William C. Newman,* for American Civil Liberties Union of Massachusetts & another, amici curiae, submitted a brief.

ABRAMS, J. The Commonwealth appeals from an order suppressing evidence obtained from a seizure of the defendant's motor vehicle at a drug interdiction roadblock. At issue is

whether the same policy concerns that make sobriety check-points reasonable and therefore constitutional also exist with respect to drug interdiction roadblocks. A District Court judge concluded that, under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, the roadblock was unconstitutional. A single justice of this court allowed the Commonwealth's application for an interlocutory appeal. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). After the case was entered in the Appeals Court, we transferred it here on our own motion. We conclude that art. 14 prohibits roadblocks to search for contraband such as drugs. We therefore affirm the order of the District Court judge.

1. *Facts.* On the evening of November 21, 1997, State and local police established a temporary roadblock in Holyoke to detect and deter trafficking in illegal narcotics. The roadblock was set up in an area of the city that had a reputation as a high crime area. Official guidelines stated that the purposes of the roadblock were to confiscate illegal narcotics, to apprehend persons transporting illegal narcotics in motor vehicles, and to deter illegal narcotics trafficking. Fifty-eight vehicles were stopped at the roadblock. Approximately one of every four drivers was directed to the "pit" area for further questioning. The police made three arrests and issued two citations. The defendant, Hector Rodriguez, was the only person arrested for a narcotics offense.

After the defendant's vehicle, a Chevrolet Blazer, stopped at the roadblock, Officer Patrick Cadigan shone a flashlight through the window of the vehicle and observed an opened package of Philly Blunt cigars on the passenger seat. According to the Commonwealth, Cadigan knew from his training and experience that cigars are often used in smoking marijuana.

Cadigan told a second officer, Lieutenant Frederick Seklecki, what he had seen. Leaning his head through the window of the Blazer, Seklecki sniffed the interior. He smelled a "freshly smoked cigar type marijuana smell." Seklecki then sent the defendant to a "pit" area a short distance from the place of the stop. There, the police, after learning that the defendant's driver's license had been suspended, placed him under arrest for the traffic offense. Aided by a narcotics detection dog, the police searched the vehicle. They discovered two small ends of cigars containing marijuana. The defendant was charged with possess-

ing a Class D substance and operating a motor vehicle with a suspended license.

The defendant filed a pretrial motion to suppress evidence seized during the roadblock. After an evidentiary hearing, the motion judge allowed the defendant's motion to suppress. The Commonwealth filed a timely notice of appeal.

2. *Constitutional principles.* We begin with basic principles of search and seizure jurisprudence common to art. 14 and the Fourth Amendment. A seizure occurs under the Fourth Amendment and art. 14 whenever a motor vehicle is stopped by an agent of government. See *Michigan Dep't of State Police* v. *Sitz,* 496 U.S. 444, 450 (1990); *Commonwealth* v. *Anderson,* 406 Mass. 343, 345 (1989). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' " under the Fourth Amendment. *Whren* v. *United States,* 517 U.S. 806, 809-810 (1996). See *Sitz, supra* at 450-451; *Commonwealth* v. *McGeoghegan,* 389 Mass. 137, 139 (1983) (applying protections of Fourth Amendment and art. 14).

Generally, searches and seizures must be conducted pursuant to a warrant based on probable cause. See Fourth Amendment to the United States Constitution; art. 14 of the Declaration of Rights of the Massachusetts Constitution. Where obtaining a warrant is not practical, searches and seizures may be proper if probable cause or reasonable suspicion exists. See *Chambers* v. *Maroney,* 399 U.S. 42, 51 (1970); *United States* v. *Carroll,* 267 U.S. 132, 149 (1925); *Commonwealth* v. *Anderson, supra* at 347; *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 54 (1974).

Federal courts have created limited exceptions to the Fourth Amendment requirement that seizures be based on probable cause or reasonable suspicion. In *Brown* v. *Texas,* 443 U.S. 47 (1979), the United States Supreme Court employed a balancing test to determine whether a particular seizure violates the Fourth Amendment. In *Brown,* the Supreme Court invalidated a criminal statute that required individuals to identify themselves to police when asked to do so. The Supreme Court weighed three factors in assessing the reasonableness of "seizures that are less intrusive than a traditional arrest": "[1] the gravity of the public concerns served by the seizure, [2] the degree to which the seizure advances the public interest, and [3] the severity of the interference with individual liberty." *Id.* at 50-51.

The Supreme Court has, on occasion, departed from this

tripartite balancing test. In *Chandler* v. *Miller,* 520 U.S. 305, 308 (1997), the Supreme Court invalidated a Georgia law requiring certain candidates for public office to be tested for certain drugs. Rather than use the *Brown* balancing test, the Supreme Court noted that "exceptions to the main rule [requiring individualized suspicion] are sometimes warranted based on *'special needs, beyond the normal need for law enforcement'* " (emphasis added). *Id.* at 313-314, quoting *Skinner* v. *Railway Labor Executives' Ass'n,* 489 U.S. 602, 619 (1989). These special needs typically involve an immediate or particularly serious risk to the public. "[W]here the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as 'reasonable' — for example, searches now routine at airports and at entrances to courts and other official buildings. . . . But where . . . public safety is not genuinely in jeopardy, the Fourth Amendment precludes the suspicionless search, no matter how conveniently arranged" (citations omitted).[1] *Id.* at 323.

Thus, except for the limited number of public safety intrusions that can be justified under tests such as those set forth in *Brown* and *Chandler,* "law enforcement officers must possess at least articulable suspicion before stopping a vehicle."[2] *United States* v. *Huguenin,* 154 F.3d 547, 553 (6th Cir. 1998). In *Michigan Dep't of State Police* v. *Sitz, supra,* the Supreme Court applied the *Brown* balancing test in a Fourth Amendment challenge to a roadblock set up to detect individuals operating under the influence of drugs or alcohol. *Id.* at 450-455. The Supreme Court concluded that sobriety checkpoints do not violate the Fourth Amendment because of the public interest in keeping drunk drivers off the roads. *Id.* at 455.

Although we have not applied exactly the same analysis as Federal courts, we have also allowed limited exceptions to the reasonable suspicion requirement where an intrusion is limited

[1]Immigration and customs search and seizure programs "depend ultimately on sovereign powers over foreign relations, foreign commerce, citizenship, and immigration . . . that states and cities do not possess" (citation omitted). *Edmond* v. *Goldsmith,* 183 F.3d 659, 664 (7th Cir. 1999). The purposes served by these sovereign powers are different in character from most other interests that government could assert in justification of a search or seizure. See *United States* v. *Montoya de Hernandez,* 473 U.S. 531, 537-538 (1985).

[2]We note that roadblocks to apprehend fleeing dangerous felons are among these exceptions. See, e.g., *United States* v. *Harper,* 617 F.2d 35, 40-41 (4th Cir.), cert. denied, 449 U.S. 887 (1980).

and serves a pressing public purpose.[3] In *Commonwealth* v. *Mc-Geoghegan*, 389 Mass. 137, 143-145 (1983), we first indicated that sobriety checkpoints could be conducted in such a way as to comply with constitutional constraints under both the Federal and State constitutions. In *Commonwealth* v. *Trumble*, 396 Mass. 81, 86 (1985), although we did not explicitly apply the *Brown* balancing test, we acknowledged that "there exists a strong public interest in reducing the 'carnage caused by drunk drivers.' " *Id.*, quoting *South Dakota* v. *Neville*, 459 U.S. 553, 558 (1983). We noted that studies suggest that, "on any weekend night in Massachusetts, between five and ten per cent of all drivers on the road will be seriously impaired by alcohol." *Id.* at 87. We have continued to recognize the immediate and grave danger posed by drivers who operate under the influence of drugs or alcohol. See *Commonwealth* v. *Shields*, 402 Mass. 162, 167 & n.3 (1988). See also *Michigan Dep't of State Police* v. *Sitz, supra* at 451 ("No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it").

We have emphasized not only the unique nature of the problems caused by those who drive while under the influence, but also the narrowness of the exception to the warrant requirement that we carved out. In *Commonwealth* v. *Anderson, supra* at 347, we stated that the "exception from usual Fourth Amendment demands that has been made to accommodate fixed roadblocks for detection of illegal aliens . . . and drunk drivers . . . is rather exceptional and very limited. This court has carved a 'sui generis' exception for the enforcement of G. L. c. 90, § 24 . . . on the grounds that a 'reasonable' roadblock *involves a 'minimal' State intrusion upon the reduced privacy of drivers*, one that is in any case outweighed by the strong public interest in reducing the carnage caused by drunk drivers" (emphasis added; citations omitted).

---

[3]See, e.g., *O'Connor* v. *Police Comm'r of Boston*, 408 Mass. 324 (1990) (upholding drug testing of police cadets where cadets consent to testing); *Commonwealth* v. *Trumble*, 396 Mass. 81 (1985) (approving roadblock intended to catch drunken drivers); *Commonwealth* v. *Carter*, 132 Mass. 12 (1882) (upholding provision of statute authorizing milk inspectors to enter carriages used in conveying milk and authorizing inspectors to seize and test milk specimens when they have reason to believe that it is adulterated); *Commonwealth* v. *Ducey*, 126 Mass. 269 (1879) (upholding provision of statute authorizing police to enter and inspect premises of persons licensed to sell intoxicating liquors).

The theme of our roadblock decisions is that the exception for operating while under the influence is very narrow. Because of the limited scope of those decisions, we rejected the "argument that the result we reach[ed] opens the door for suspicionless searches and seizures in other contexts" and noted that "[p]olice will not be allowed, for example, to cordon off 'high crime areas' and search all the people on the street." *Commonwealth* v. *Shields, supra* at 167.

In the context of determining the constitutionality of operating while under the influence roadblocks, our conclusions have, for the most part, paralleled those of the Federal courts. However, we have indicated that art. 14 might provide greater protection against the intrusions occasioned by roadblocks than does the Fourth Amendment. In *Commonwealth* v. *Shields,* for instance, we noted that, "[a]lthough the Supreme Court has indicated that roadblock seizures to enforce license and registration regulations do not violate the Fourth Amendment, *Texas* v. *Brown,* 460 U.S. 730, 739 (1983), it may well be, given the much lower state interest in assuring compliance with license and registration regulations, that roadblocks for that purpose are not permissible under art. 14." *Commonwealth* v. *Shields, supra* at 167 n.3. See *id.* at 164 n.1. We next consider whether drug interdiction roadblocks may be distinguished from operating while under the influence roadblocks.

3. *Characteristics of drug interdiction roadblocks.* Our discussion is limited to drug interdiction roadblocks because they are at issue here. Because there is no principled way to distinguish between drugs, unlawful guns, pornography, and other contraband, the general principles, set forth *infra,* apply to all roadblocks to interdict contraband.

The Commonwealth argues that "roadblocks limited to countering the pernicious effects of drug trafficking are just as important as roadblocks designed to eradicate the drunk driving problem."[4] Because of the similarities between drug interdiction roadblocks and operating while under the influence roadblocks,

---

[4]The operating while under the influence statute prohibits not only drunk driving, but also operating under the influence of a number of substances, including narcotics. General Laws c. 90, § 24 (1) (*a*) (1), in pertinent part, states:

"Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of

the Commonwealth concludes, drug interdiction roadblocks are constitutional. We disagree. We think that there are major differences between operating while under the influence roadblocks and drug interdiction roadblocks.

The crucial distinction between drug interdiction and operating while under the influence roadblocks is that the purpose of narcotics interdiction checkpoints is "the discovery of evidence of crime." *Camara* v. *Municipal Court*, 387 U.S. 523, 537 (1967). Unlike the minimal and focused intrusion occasioned by operating while under the influence roadblocks, drug interdiction roadblocks are designed solely to further criminal justice goals. For example, the Holyoke roadblock at issue was a "general program[] of surveillance which invade[d] privacy wholesale in order to discover evidence of crime." *Edmond* v. *Goldsmith*, 183 F.3d 659, 664 (7th Cir. 1999) (invalidating roadblock program with sole purpose of interdicting narcotics).

Further, the relationship between operating while under the influence and the public's safety on the roads is obvious and direct.[5] The damage caused by impaired drivers occurs on the public roads. Impaired drivers present an immediate risk to the traveling public. Operating while under the influence roadblocks offer immediate relief by removing a "deadly menace" from the public roads.[6] *Commonwealth* v. *Blais*, 428 Mass. 294, 298 (1998). The corollary of these observations is that an operating while under the influence roadblock is not a generalized search

---

.       the public have access as invitees or licensees, operates a motor vehicle while under the influence of intoxicating liquor, or of marijuana, narcotic drugs, depressants or stimulant substances, all as defined in [§ 1] of [c. 94C], or the vapors of glue . . . ."

[5]In 1998, 15,935 persons died in alcohol-related traffic crashes, defined as crashes in which a driver or nonoccupant (for instance, a pedestrian) had a blood alcohol concentration of 0.01 grams per deciliter or greater. See U.S. Dep't of Transp., National Highway Traffic Safety Admin., Traffic Safety Facts 1998: Alcohol 1. One hundred and ninety-two persons died in Massachusetts. See *id.* at 7. See also U.S. Dep't of Transp., National Highway Traffic Safety Admin., Traffic Safety Facts 1998: State Alcohol Estimates.

[6]In this respect, we view operating while under the influence roadblocks as serving a purpose similar to that of checkpoints at courthouses and airports. See, e.g., *Commonwealth* v. *Harris*, 383 Mass. 655, 656 (1981) (discussing the need for protective measures at courthouses); *United States* v. *Edwards*, 498 F.2d 496, 500 (2d Cir. 1974) (discussing need for protective measures at airports). Thus, our analysis parallels that of the United States Supreme Court in *Chandler* v. *Miller*, 520 U.S. 305, 308 (1997) (discussing "special needs"

for evidence of criminal activity conducted without probable cause or reasonable suspicion.

Unlike operating while under the influence, trafficking in illegal narcotics involves a wide variety of transportation modes. See, e.g., *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763 (1981) (recognizing "an increasing use of bicycles to transport illegal drugs"). Thus, narcotics interdiction is not inextricably connected with the public's use of the roads. See *Merrett* v. *Moore*, 77 F.3d 1304, 1305 (11th Cir.) (Barkett, J., dissenting from denial of petition for en banc rehearing), cert. denied, 519 U.S. 812 (1996) (harm caused by drug traffickers is "completely unrelated to highway safety").

The nature of the harm caused by drug trafficking also differs from that caused by drivers operating while under the influence. The drug problem in the United States is certainly grave. "Drug-related deaths remain near historic highs." Office of National Drug Control Policy, The National Drug Control Strategy: 1999, 14. In 1996, 14,843 deaths in the United States were induced by drugs. See *id.* at 15. However, the risk that narcotics trafficking poses to the public is not immediate, as is the risk posed by a person operating while under the influence.

Unlike operating while under the influence roadblocks, narcotics interdiction roadblocks do not provide immediate protection to the public using the roadways. Although apprehending narcotics traffickers may have an eventual impact on the public safety, that impact will necessarily be more remote and tenuous than the impact of removing impaired drivers from the road.

4. *The constitutionality of drug interdiction roadblocks.* The defendant argues that the Holyoke drug interdiction roadblock was an unconstitutional search and seizure under both the Fourth Amendment and art. 14. As a general rule in deciding such questions, we look first to any applicable statutes, then to our State Constitution (if argued separately), and only if necessary to the Federal Constitution. We have held that art. 14 may provide greater protection than the Fourth Amendment against searches and seizures.[7] We determine that roadblocks for the purpose of searching for evidence of drug trafficking and other

exception). One might say that the need to remove impaired drivers from the public ways is a "special need" beyond that of general law enforcement.

[7]We have held that art. 14 may provide more protection than the Fourth Amendment to individuals in automobiles. See *Commonwealth* v. *Gonsalves*,

contraband violate art. 14. Therefore, we do not address the defendant's claim under the Federal Constitution.

Article 14 was drafted in response to the blanket search powers granted to the British by "writs of assistance." "British search policies generally are acknowledged to have spurred on revolutionary sentiment in colonial Massachusetts. Opposition to the search policies centered upon the use by British customs house officers of the writs of assistance, general warrants which allowed officers of the crown to search, at their will, wherever they suspected untaxed goods to be, and granted the officials the right of forcible entry." *Commonwealth* v. *Cundriff*, 382 Mass. 137, 143 (1980), cert. denied, 451 U.S. 973 (1981). See *Boyd* v. *United States*, 116 U.S. 616, 625 (1886). "The history should not require retelling. But old and established freedoms vanish when history is forgotten." *Screws* v. *United States*, 325 U.S. 91, 120 (1945).

Roadblocks established for the purpose of interdicting drugs and other contraband essentially give to the police the same powers with respect to individuals in their automobiles as the writs of assistance granted to the British officials with respect to individuals in their homes. Viewed in light of the Commonwealth's history, it is clear that the Holyoke roadblock is precisely the type of search that the drafters of art. 14 sought to

429 Mass. 658, 688 (1999) (holding that art. 14 forbids police officer from ordering driver or passenger out of motor vehicle incident to routine traffic stop unless officer reasonably believes his safety or safety of others is in danger); *Commonwealth* v. *Shields*, 402 Mass. 162, 167 n.3 (1988) (noting that art. 14 may provide more protection than Fourth Amendment to individuals in motor vehicles).

We also have held that art. 14 provides broader protections than the Federal Constitution in other contexts. See *Commonwealth* v. *Stoute*, 422 Mass. 782 (1996) (holding that person is seized under art. 14 once police officer has initiated pursuit of person with obvious intent of requiring him to submit to questioning); *Commonwealth* v. *Lyons*, 409 Mass. 16 (1990) (holding that art. 14 forbids use of totality of circumstances test for evaluating whether reasonable suspicion exists to justify automobile stop); *Commonwealth* v. *Amendola*, 406 Mass. 592 (1990) (adopting "automatic standing" rule under art. 14 allowing defendant to challenge constitutionality of search or seizure even when defendant lacks expectation of privacy in place or object searched or seized); *Commonwealth* v. *Blood*, 400 Mass. 61 (1987) (holding that art. 14 forbids warrantless electronic surveillance of conversation where only one party to conversation has consented to surveillance); *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985) (holding that "art. 14 provides more substantive protection to criminal defendants than does the Fourth Amendment in the determination of probable cause").

prevent. Drug interdiction roadblocks stop citizens without probable cause or reasonable suspicion to look for evidence of criminal activity (in colonial times, untaxed goods). Such a search is precisely what James Otis and John Adams sought to prevent by art. 14. "Those who do not remember the past are condemned to relive it." G. Santayana, The Life of Reason: 1905-1906.[8]

5. *Conclusion.* We conclude that this roadblock violated art. 14 and that the stop and seizure of the defendant's vehicle was unconstitutional. Absent an emergency or imminent threat to the lives and safety of the public, roadblocks to interdict contraband violate art. 14.[9]

The order of the District Court judge suppressing the evidence is affirmed based on art. 14. This matter is remanded to the District Court for such further proceedings as may be needed.

*So ordered.*

LYNCH, J. (concurring). I write separately to reiterate my views on our search and seizure jurisprudence and to note an unfortunate inconsistency between the court's decision today and prior decisions affirming the constitutional validity of operating while under the influence roadblocks.

This court has recognized that the reasonableness of a seizure usually depends on facts which we measure against probable cause or reasonable suspicion that an individual has engaged in

---

[8]Because we conclude that the seizure of the defendant's vehicle violated art. 14, we do not reach the Commonwealth's contention that Cadigan's observation of the cigars gave Seklecki either probable cause or reasonable suspicion that justified Seklecki's leaning his head through the window of the defendant's vehicle. Cf. *Commonwealth* v. *Podgurski*, 386 Mass. 385 (1982), cert. denied, 459 U.S. 1222 (1983) (officer "searched" windowless van when he inserted his head into interior).

[9]The concurrence correctly notes that our previous decisions on the constitutionality of driving while under the influence checkpoints employed a balancing test similar to *Brown* v. *Texas*, 443 U.S. 47 (1979). See, e.g., *Commonwealth* v. *Anderson*, 406 Mass. 343 (1989); *Commonwealth* v. *Shields, supra.* By contrast, here we do not use a balancing test because there is no imminent threat to public safety and no nexus between the activity (driving) and the law enforcement objective (narcotics interdiction). Because there is no connection between the driving and the interdiction, there is no reason to employ a balancing test. There is nothing to balance. The Commonwealth's conduct is unconstitutional under art. 14.

criminal activity. See *Commonwealth* v. *Shields*, 402 Mass. 162, 170 (1988) (Liacos, J., dissenting, with whom Lynch, J., joined); *Commonwealth* v. *McGeoghegan*, 389 Mass. 137, 139 (1983). I have consistently maintained that this test should be applied to seizures occurring in the course of automobile roadblocks. See *Commonwealth* v. *Shields, supra* at 169, 177-178; *Commonwealth* v. *Trumble*, 396 Mass. 81, 98-99, 102 (1985) (Lynch, J., dissenting, with whom Liacos, J., joined). I accept, as I must, that both the United States Supreme Court and this court have supplanted this traditional rule with the illusive standard of a balancing approach that weighs the public interest against the individual's right to personal security free from arbitrary interference by law enforcement officials. The virtue of this balancing approach, in the court's view, is its relaxation of the requirement of individualized suspicion for a warrantless search and seizure when this would serve ostensibly "pressing public purpose[s]," such as protecting the public from serious and immediate threats to its safety and welfare. See *ante* at 580-581. The vice of such a test is that it permits a standardless interference with important constitutional protections of individual rights. I have argued, with particular reference to operating while under the influence roadblocks, that the Commonwealth should at a minimum be required to prove that a chosen procedure for stopping and searching citizens without reasonable suspicion achieves "a degree of law enforcement and [public] safety that is not reasonably attainable by less intrusive means." *Commonwealth* v. *Trumble, supra* at 98-99 (Lynch, J., dissenting), quoting *Commonwealth* v. *McGeoghegan, supra* at 143-144.[1] Alternatively, I have argued that, if we are to balance the scales in our search and seizure cases, we must do so consistently, treating like cases alike; we must fairly and realistically evaluate the extent to which various search procedures

---

[1] The court, however, rejected the "less intrusive alternative" requirement as unduly burdensome to government. See *Commonwealth* v. *Shields*, 402 Mass. 162, 166 (1988). Instead, the court substitutes adherence by law enforcement officials with the criteria established in *Commonwealth* v. *McGeoghegan*, 389 Mass. 137, 143-144 (1983). See *Commonwealth* v. *Anderson*, 406 Mass. 343, 347 (1989); *Commonwealth* v. *Shields, supra* at 164-165; *Commonwealth* v. *Amaral*, 398 Mass. 98, 99-101 (1986); *Commonwealth* v. *Trumble*, 396 Mass. 81, 87, 89-90 (1985). It has apparently been somehow overlooked that the less intrusive alternative requirement as a prerequisite to constitutional road blocks is a concept the court employed in *Commonwealth* v. *McGeoghegan, supra* at 143-144. Cf. *Commonwealth* v. *Shields, supra* at 168.

.

intrude on personal privacy, and avoid distinguishing arbitrarily among the various public purposes which might be cited by law enforcement officials to justify the extraordinary act of randomly seizing and searching law-abiding citizens without particularized suspicion of criminal activity. See *Horsemen's Benevolent & Protective Ass'n* v. *State Racing Comm'n*, 403 Mass. 692, 708-710 (1989) (Lynch, J., dissenting). In connection with this latter point, I have observed that "the pervasive harmful influence of drugs on contemporary society cannot seriously be denied. It presents a social problem of at least equal magnitude to operating a motor vehicle under the influence of alcohol." *Id.* at 709.

Precisely because I concur with the court's conclusion today concerning roadblocks to interdict contraband, I reiterate my position, first advanced in *Commonwealth* v. *Trumble, supra* at 98-102, that operating while under the influence roadblocks are similarly offensive to the protections afforded individual liberty and personal privacy by art. 14 of the Massachusetts Declaration of Rights. The distinction which the court attempts to draw in part 3, *ante* at 582-584, between roadblocks designed to remove drunk drivers from the roadways and those aimed at curbing the flow of illegal drugs or other contraband is, in my view, untenable. The court makes some effort to ground this distinction in the greater intrusiveness of the search entailed by a narcotics interdiction roadblock. See *ante* at 583 (describing operating under the influence roadblocks as occasioning "minimal and focused intrusion"). But this ground is illusive: the court's assertion to the contrary notwithstanding, an operating under the influence roadblock is most assuredly nothing other than "a generalized search for evidence of criminal activity [i.e., violations of G. L. c. 90, § 24] conducted without probable cause or reasonable suspicion." *Ante* at 583-584. The crux of the court's proposed distinction, however, consists in its twin assertions that narcotics interdiction roadblocks, unlike operating while under the influence roadblocks, serve exclusively criminal justice goals and that the threat to the public from illegal drugs, while admittedly serious, is less immediate and more tenuous than the threat to public safety posed by drunk drivers. See *ante* at 583-584. But such assertions overlook the magnitude of the contemporary social evils linked to the trafficking in and use of illegal drugs. Furthermore, experience tends to demonstrate that most people engaged in the illegal transportation of controlled substances are users themselves. It

cannot be doubted that the danger to the public arising from the operation of motor vehicles on the highways of the Commonwealth by intoxicated persons is the same regardless of the substances that caused their intoxication. In short, the court, it seems to me, has here fastened on a distinction that lacks a difference. Even more importantly, the court's reasoning today further illustrates how ephemeral a balancing approach is when founded on debatable and changeable evaluations of society's most pressing needs and problems and, therefore, how unsuitable it is as a touchstone for the reasonableness of a warrantless search and seizure.

Because I see no principled distinction between operating while under the influence roadblocks and roadblocks designed to interdict illegal drugs or other contraband, I believe that they should be accorded equal treatment by this court. Absent probable cause or reasonable suspicion of criminal activity, both forms of warrantless search and seizure should be held constitutionally invalid.