## COMMONWEALTH vs. ONEIL G. GRANT.

No. 01-P-1033.

Norfolk. October 8, 2002. - February 7, 2003.

Present: KANTROWITZ, KASS, & MILLS, JJ.

*Constitutional Law,* Roadblock by police, Reasonable suspicion. *Search and Seizure,* Roadblock by police. *Firearms.*

This court concluded that an emergency police roadblock aimed at apprehending fleeing, dangerous suspects was reasonable and did not require individualized suspicion, where the seizure constituted a minimal intrusion upon the right of drivers to privacy, an interest that was outweighed by the strong public interest in apprehending escaping dangerous suspects; moreover, this court concluded that a police officer's stop of the vehicle in which the defendant was a passenger, the officer's questioning of the vehicle's occupants individually, his requiring them to exit the vehicle, and his arrest of them upon observing a gun inside the vehicle was proper under the circumstances of the case. [338-341]

At the trial of a criminal complaint charging the defendant with defacing a firearm serial number in violation of G. L. c. 269, § 11C, the judge properly denied the defendant's motion for a required finding of not guilty, where the judge was warranted in finding that the evidence that the defendant offered was insufficient to rebut the inference raised by the statute to the effect that possession or control of a firearm with its serial number defaced was prima facie evidence that the person having possession or control had defaced the serial number. [341]

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on November 1, 1999.

A pretrial motion to suppress evidence was heard by *James J. McGovern,* J., and the case was heard by *Diane E. Moriarty,* J.

*Andrew T. Blume* for the defendant.

*James A. Reidy,* Assistant District Attorney, for the Commonwealth.

MILLS, J. The defendant was stopped as part of an early morn-

ing police roadblock[1] in an attempt to apprehend one or more suspects who had been involved in a shooting incident.[2] The defendant was questioned, and after police observed a weapon in his vehicle, he was arrested. In a jury-waived trial, he was found guilty of carrying a firearm without a license, G. L. c. 269, § 10(*a*), and defacing a firearm serial number, G. L. c. 269, § 11C. He contends that (1) his inculpatory admissions and the weapon should have been suppressed because the roadblock constituted an illegal seizure in violation of his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights; and (2) there was insufficient evidence that he defaced the serial number of a firearm. We affirm.

1. *The roadblock.* We summarize the facts found by the motion judge with respect to the roadblock, which, for context, we supplement with uncontested testimony from the suppression hearing, see *Commonwealth* v. *Torres*, 433 Mass. 669, 670 (2001), mindful that assessment of witness credibility is the province of the motion judge. See *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. 638, 639 (2001); *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 492 (2001), *S.C.*, 57 Mass. App. Ct. 36 (2003).[3] At 3:40 A.M. on October 31, 1999, Lieutenant Arthur Sullivan of the Randolph police department received a radio report of multiple gun shots and numerous 911 calls in the Chestnut Circle area of Randolph. Chestnut Circle is a residential cul-de-sac running off Chestnut Street, which in turn is accessed from Route 28, North Main Street, the main thoroughfare in Randolph. Between Chestnut Circle and North

---

[1]We use the word "roadblock" with caution, noting at the outset that the emergency police action in this case appears facially as a roadblock, but occurred in substantially different circumstances from the preplanned sobriety and drug interdiction roadblocks that have been reviewed by the Supreme Judicial Court. See, e.g., *Commonwealth* v. *Trumble*, 396 Mass. 81 (1985); *Commonwealth* v. *Rodriguez*, 430 Mass. 577 (2000).

[2]The motion judge found that the traffic block was also intended to prevent accidents resulting from motorists fleeing the scene of the shooting.

[3]We pause to emphasize that while we consider minor details of testimony to which the motion judge did not specifically allude, we do not engage in appellate fact finding, see *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 n.2 (1996); rather, we "merely fill out the narrative." *Commonwealth* v. *Butler*, 423 Mass. 517, 526 n.10 (1996).

Main Street, a number of streets run off Chestnut Street. Sulli-van proceeded to the area and, when traveling west down Chestnut Street toward Chestnut Circle, noticed several vehicles heading east at a high rate of speed. The occupant of one vehicle waved Sullivan to stop and exclaimed, "They're shooting up the place." The scene at the end of Chestnut Circle was described as chaotic, with at least fifty people standing around. Sullivan testified that he had no idea who was involved in the shooting, whether anyone was injured, or whether the shooters[4] were escaping. In front of the house that appeared to be at the center of the disturbance, Sullivan saw several empty shell casings. He radioed for backup, advising officers to use extreme caution because firearms were involved. He ordered officers to stop all vehicles leaving the scene and to question the occupants, because he was concerned that someone had been shot and that the shooters might be fleeing the scene by car.

Officer Michael Tuitt also responded to the 3:40 A.M. radio dispatch. There was heavy traffic as he approached the intersec-tion of North Main Street and Chestnut Street, and he narrowly avoided collision with a sport utility vehicle that failed to stop at a red light. He pursued and stopped the vehicle. After observ-ing other vehicles exceeding the speed limit and failing to stop for the red light, Tuitt positioned his cruiser across the east-bound lane of Chestnut Street, close to the intersection of North Main Street, one-quarter to one-half mile from Chestnut Circle, in an attempt to stop traffic and prevent an accident.

After positioning his cruiser, and before exiting, Tuitt heard Sullivan's radio broadcast ordering "everyone questioned leav-ing the scene." While the police knew there had been a shoot-ing, Tuitt testified that they did not know whether those involved in the shooting were on foot or in a car fleeing the scene. Concerned that any one of the vehicle occupants could have been involved in the shooting, Tuitt began questioning the oc-cupants of the vehicles that had been stopped, which by then numbered between ten and fifteen.

After the occupants of the first two cars were questioned and allowed to go on their way, Tuitt proceeded to approach the

---

[4]Because of the multiple gunshots, the police suspected more than one person shooting.

third car, which contained four male occupants, two in the front seat and two in the rear. Tuitt, believing his own safety would best be preserved if he questioned the occupants separately, asked the driver to exit and proceeded to question him. Tuitt next asked the front seat passenger to exit and, as he did, Tuitt noticed the butt end of a firearm beneath the front passenger seat, which amplified his concern for his safety, and he ordered the two rear seat occupants (one of whom was the defendant) to exit, so that the four individuals would be distanced from the handgun. All four were then patted down, handcuffed, and arrested. Tuitt then called his supervisor, a required local police procedure when a firearm is involved. An M38 semiautomatic pistol with a defaced serial number was seized from the vehicle.

2. *Constitutional setting.* There is no disagreement that "[a] seizure occurs under the Fourth Amendment and art. 14 whenever a motor vehicle is stopped by an agent of government." *Commonwealth* v. *Rodriguez*, 430 Mass. 577, 579 (2000). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' under the Fourth Amendment." *Id.*, quoting from *Whren* v. *United States*, 517 U.S. 806, 809-810 (1996). "Generally, searches and seizures must be conducted pursuant to a warrant based on probable cause. . . . Where obtaining a warrant is not practical, searches and seizures may be proper if probable cause or reasonable suspicion exists." *Id.*, citing *Chambers* v. *Maroney*, 399 U.S. 42, 51 (1970).

Ordinarily, "law enforcement officers must possess at least articulable suspicion before stopping a vehicle." *Commonwealth* v. *Rodriguez*, *supra* at 580, quoting from *United States* v. *Huguenin*, 154 F.3d 547, 553 (6th Cir. 1998). There are, however, "limited exceptions" to the "requirement that seizures be based on probable cause or reasonable suspicion." *Id.* at 579. Under the Fourth Amendment, roadblocks to apprehend fleeing dangerous suspects may be among the limited public safety intrusions permitted law enforcement officers who do not possess "articulable suspicion" to stop a particular vehicle. See *id.* at 580 n.2, citing *United States* v. *Harper*, 617 F.2d 35, 40-41 (4th Cir.), cert. denied, 449 U.S. 887 (1980). Although the Supreme

Judicial Court has "not applied exactly the same analysis as Federal courts, [the court has] allowed limited exceptions to the reasonable suspicion requirement where an intrusion is limited and serves a pressing public purpose." *Id.* at 580-581 (footnote omitted). Whether this analysis is called a "limited exception" or a balancing test, we consider the present case to be one not requiring particularized suspicion.

3. *Discussion.* In holding this roadblock constitutionally valid, our reasons are somewhat different from those of the motion judge, who apparently concluded that the Commonwealth had satisfied the "reasonable suspicion" standard. See generally *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990), citing *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). While the present facts do establish "reasonable suspicion" as to the occurrence of a crime, that suspicion was not particularized with respect to any individual suspect or vehicle. To the contrary, the facts indicate this was a deliberate emergency police effort to apprehend one or more fleeing suspects as to whom the police had no physical description, no information as to their number, and indeed no indication as to whether they were fleeing on foot or by vehicle.

An emergency stop of numerous vehicles aimed at apprehending a fleeing, dangerous suspect requires a somewhat different constitutional analysis from a preplanned, "blueprinted" roadblock at a predetermined location, such as a sobriety checkpoint or a drug interdiction roadblock. Unlike the latter, the emergency model roadblock has not been directly addressed by Massachusetts courts. However, in *Indianapolis* v. *Edmond*, 531 U.S. 32, 41 (2000), the Supreme Court, considering a preplanned roadblock, and emphasizing that it had never approved a checkpoint program "whose primary purpose was to detect evidence of ordinary criminal wrongdoing," acknowledged the existence of "limited exceptions to the general rule that a seizure must be accompanied by some measure of individualized suspicion." The Court stated that "there are circumstances that may justify a law enforcement checkpoint where the primary purpose would otherwise, but for some emergency, relate to ordinary crime control. For example, . . . the Fourth Amendment would almost certainly permit an appropriately

tailored roadblock set up . . . to catch a dangerous criminal who is likely to flee by way of a particular route." *Id.* at 44.

As the Supreme Judicial Court noted in *Commonwealth* v. *Rodriguez,* 430 Mass. at 580 n.2, the Fourth Circuit has also held, applying a "reasonableness" analysis, that a roadblock, established for the purpose of apprehending suspects fleeing along the only access road leading from the site of a preplanned drug raid, was permissible under the Fourth Amendment. See *United States* v. *Harper,* 617 F.2d at 40-41. In *Harper,* the court emphasized that the purpose of the stops was to arrest suspects for a known crime, not to discover evidence of undetected crimes, and stated that "[b]y virtue of the exigency of fleeing, *perhaps dangerous,* suspects, we think the stops of all persons found *on a likely access route to the scene of the crime* was reasonable, both in its purpose and in the manner it was conducted." *Id.* at 41 (emphases supplied).

We hold that, in a case such as this, involving an emergency roadblock aimed at apprehending a fleeing, dangerous suspect, where there is no particularized suspicion, the relevant constitutional analysis is whether the seizure is reasonable under the Fourth Amendment and art. 14. In determining reasonableness, "we balance the public interest against the individual's right to personal security free from arbitrary interference by law enforcement officials." *Commonwealth* v. *Anderson,* 406 Mass. 343, 346 (1989). We conclude, on these facts, that the roadblock involved a minimal intrusion "upon the reduced privacy of drivers, [an interest] that is, in any case, outweighed by the strong public interest," in this case, of apprehending escaping dangerous suspects. *Id.* at 347. Individualized suspicion was not required in this emergency circumstance. See *Commonwealth* v. *Rodriguez, supra*; *Commonwealth* v. *Anderson, supra.*

In reaching this conclusion, we note that (1) there were several reports of multiple gunshots in the early morning hours in a heavily residential area, an undeniable signal of serious danger and public threat; (2) the police found physical evidence, in the form of empty gunshot casings outside the house that was, apparently, the epicenter of the disturbance; (3) Chestnut Circle is a cul-de-sac accessible by car from Chestnut Street; (4) people on foot and in motor vehicles were excitedly at-

tempting to leave the area of the shooting; (5) the police were confronted with a rapidly developing situation that required an immediate response; (6) the police had abundant reason to be apprehensive of the possibility of violence and were understandably concerned for public safety; (7) local police may be presumed to be familiar with the most traveled routes and those most likely to be used in any escape; and (8) the police action occurred promptly after the shooting incident.

In these circumstances, the police could thus reasonably conclude that (1) a crime involving a firearm had just taken place; (2) the perpetrator(s) would likely flee the area; (3) the perpetrator(s) would likely be armed, and thus pose a threat to public safety; and (4) Chestnut Street, in the direction of Route 28, was a likely exit route from the area. The roadblock was permissible.[5]

With respect to ordering the driver, and then the passengers, out of the vehicle, Officer Tuitt was permitted to question the occupants in a manner calculated to ensure his personal safety, and, to this end, could effect a limited search for weapons. This case stands in a posture far different from, for example, *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 662-663 (1999), which held that "art. 14 requires that a police officer, in a routine traffic stop, must have a reasonable belief that the officer's safety, or the safety of others, is in danger before ordering a driver out of a motor vehicle." Simply stated, there was nothing routine about this traffic stop. The factors we have recited that established the emergency nature of the roadblock similarly serve to establish the potential lethality inherent in the questioning of the occupants of a motor vehicle. This is not a situation where "police officers handling a routine traffic violation will engage, in the absence of justification, in stalling tactics, obfuscation, strained conversation, or unjustified exit orders, to

---

[5] It is true that "[a]dherence to a neutrally devised, preplanned blueprint in order to eliminate arbitrariness and discretion has been [the Supreme Judicial Court's] principal prerequisite for abandoning the requirement of individualized suspicion in roadblock stops." *Commonwealth* v. *Anderson*, 406 Mass. 343, 349 (1989). However, as we have stated, the circumstances of this case require an analysis quite different from that used for preplanned roadblock cases. See note 1, *supra*. Indeed, it is the emergency nature of this case that eliminated any opportunity for prior planning.

prolong the seizure in the hope that, sooner or later, the stop might yield up some evidence of an arrestable crime." *Id.* at 663. The facts found by the judge amply support the legitimacy of the police action in the limited questioning of the occupants and in requiring them to exit the vehicle as a reasonable safety measure.

Having observed the gun, the officer was entitled, in these circumstances, to seize it, at least temporarily, to obtain further information as to the lawfulness of possession. See generally *Commonwealth* v. *Moore*, 54 Mass. App. Ct. 334, 339 (2002). When none of the four, at the time, acknowledged ownership of the gun, in these circumstances, there was probable cause to arrest; therefore, the seizure of the gun was incident to lawful arrests. This was not the type of over-reaching disapproved of in *Commonwealth* v. *Torres*, 424 Mass. 153, 158-162 (1997).

4. *Sufficiency of the evidence supporting the defendant's conviction under G. L. c. 269, § 11C.* The defendant argues that the Commonwealth failed to produce sufficient evidence to support a conviction under G. L. c. 269, § 11C, since the only evidence presented by the Commonwealth concerning the defacement of the serial number of a firearm was his own statement that the serial number "was already scratched off" when he purchased the firearm. The argument is without merit. General Laws c. 269, § 11C, expressly provides that "[p]ossession or control of a firearm the serial number or identification number of which has been removed, defaced, altered, obliterated or mutilated in any manner shall be prima facie evidence that the person having such possession or control is guilty of a violation of this section." Here, the trial judge was warranted in finding that any evidence offered by the defendant to rebut the inference raised by the statute was insufficient. Therefore, the defendant's motion for a required finding of not guilty was properly denied.

*Judgments affirmed.*