## COMMONWEALTH *vs.* GREGORY SWARTZ.

Suffolk. May 4, 2009. - July 23, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Constitutional Law,* Search and seizure, Roadblock by police. *Search and Seizure,* Automobile, Threshold police inquiry, Roadblock by police. *Motor Vehicle,* Operating under the influence.

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on October 16, 2006.

A pretrial motion to suppress evidence was heard by *David G. Nagle,* J.

An application for leave to file an interlocutory appeal was allowed by *Botsford,* J., in the Supreme Judicial Court for the county of Suffolk.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*David J. Nathanson* for the defendant.

GANTS, J. The defendant was arrested in the fall of 2006 at a roadblock established by the State police in Bridgewater as part of a sobriety checkpoint program to detect and deter drunk driving (sobriety checkpoint), and charged with operating a motor vehicle while under the influence of alcohol, third offense, in

violation of G. L. c. 90, § 24. The roadblock was conducted pursuant to State police General Order TRF-15 (TRF-15), which sets forth protocols and guidelines governing sobriety checkpoints conducted in Massachusetts, supplemented by orders and instructions specific to this roadblock included in the saturation patrol and sobriety checkpoint operational plans and directives (operations plan). At the time of the defendant's arrest, TRF-15 allowed, but did not require, an officer who makes an initial stop of a vehicle at a sobriety checkpoint to divert the vehicle to a secondary screening area for further inquiry when the officer has a reasonable suspicion, based on articulable facts, that the driver is operating while under the influence of alcohol or drugs (OUI) or has committed another violation of law. A judge in the Brockton Division of the District Court Department allowed the defendant's motion to suppress evidence resulting from his seizure at the roadblock, concluding that the guidelines contained in TRF-15 are unconstitutional on their face because they give officers discretion to decide which drivers stopped at the initial checkpoint will be directed to secondary screening.

The first question presented is whether TRF-15 allows a constitutionally impermissible amount of discretion to the initial screening officers to select which drivers are diverted to secondary screening. This question is also the first question we decided today in *Commonwealth* v. *Murphy, ante* 318 (2009), and we reach the same conclusion here as in that case: TRF-15 falls within constitutional parameters because its guidelines permit a vehicle to be diverted to secondary screening only when the officer has a reasonable suspicion, based on articulable facts, that the driver has committed an OUI violation or another violation of law. The second question presented is whether the sobriety checkpoint here was an unconstitutional roadblock to search generally for contraband or criminal activity, because officers were directed to divert vehicles to secondary screening if they observed contraband or otherwise reasonably suspected a felony or narcotic law violation. We conclude that a sobriety checkpoint does not become a roadblock whose purpose is to search for evidence of drug trafficking and other contraband simply because officers are directed that, when looking for signs of intoxication, they are not to ignore contraband or evidence of criminal activity in plain view.

Accordingly, we reverse the order allowing the motion to suppress and remand the case to the District Court for further proceedings.

*Facts.*[1] On October 15, 2006, a vehicle operated by the defendant, Gregory Swartz, was stopped at a sobriety checkpoint operated by State troopers on Route 18 in Bridgewater. The roadblock was to commence at 10 P.M. on October 14 and end at 2 A.M. on October 15. The roadblock was governed by TRF-15, supplemented by the operations plan.

The relevant provision of TRF-15 in effect at the time of the defendant's arrest states: "If there is reasonable suspicion, based upon articulable facts, that the operator and/or passenger(s) is committing or has committed an OUI violation or other violation of law, that vehicle *may* be directed from the normal flow of traffic and the offender(s) checked further" (emphasis added).[2] The operations plan included a set of written instructions issued on September 20, 2006, by Major Michael J. Crisp, the troop commander, to Captain Gerard A. Coletta, the officer charged with carrying out the roadblock. The instructions directed, among other things, that the planned roadblock "will be conducted in accordance with" TRF-15. Paragraph seven of the written instructions specifies:

> "Upon stopping a motor vehicle, the engaging officer shall make a brief and courteous statement to the operator of the motor vehicle, such as 'Good Evening, this is a State Police Sobriety Checkpoint, we're checking all operators for sobriety. Sorry for the inconvenience. Good night.' If the officer observes any articulable sign of intoxication or impairment or if the officer observes contraband, then

---

[1] We draw the facts of this case from the motion to suppress record.

[2] The State police revised State Police General Order TRF-15 (TRF-15), effective April 23, 2009, to eliminate the apparent grant of discretion. The provision now reads:

> "If there is reasonable suspicion, based upon articulable facts, that the operator and/or passenger(s) is committing or has committed an OUI violation or other violation of law, that vehicle *shall* be directed from the normal flow of traffic and the offender(s) checked further" (emphasis added).

This revision, which became effective after the defendant's arrest in this case, has no bearing on our decision.

further inquiry should be made at the area designated on the diagram [the secondary screening area]. The operator of the motor vehicle shall be allowed to drive to the designated area unless extreme intoxication or impairment is evident and obvious."

Written guidelines in a duty assignment sheet distributed to participating officers assigned to the initial screening point provide:

"5. If there is reasonable suspicion, based upon articulable facts and circumstances, that the operator and/or passenger(s) is committing or has committed an alcohol related violation or other violation of law, the vehicle may be directed from the normal flow of traffic and the offender(s) checked further.

"6. The following violations and/or observations warrant directing a motorist to drive to the check area:

"[a.] Any articulable sign that would lead you to suspect the motorist may be under the influence of alcohol and or impairing substances.

"[b.] Any observation of a crime that would amount to a felony or narcotic law violation.

"[c.] Any violation of an alcohol related crime.

"[d.] Any violation of a motor vehicle law committed in your presence."

Officers were directed in the duty assignment sheet to "bear in mind that the primary goal of the Sobriety Checkpoint is to apprehend alcohol violators and deter drunk driving."

The defendant filed a motion to dismiss or, in the alternative, to suppress evidence obtained during his detention. The judge held a hearing at which the defendant argued that the sobriety checkpoint plan and directives were unconstitutional on their face. No witnesses testified at the hearing. The judge allowed the defendant's motion, concluding that the word "may" in TRF-15 placed impermissible discretion in individual officers as to which drivers would be allowed to pass through after the initial brief

stop and which drivers would be diverted to secondary screening. According to the judge, "the guidelines made it quite possible for the officers to detain or release individuals who displayed similar levels of intoxication."

The Commonwealth sought leave to appeal from the judge's decision under Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), which was allowed by a single justice of this court and transmitted to this court for determination.[3]

*Discussion.* For the reasons detailed in *Commonwealth* v. *Murphy, supra,* we conclude that the apparent grant of discretion in TRF-15 allowing initial screening officers at sobriety checkpoints to determine whether to divert motorists they reasonably suspect to be intoxicated to secondary screening is constitutionally permissible.

The defendant also sets forth, for the first time on appeal, a second challenge to the validity of the guidelines under which the Bridgewater roadblock operated. He argues in his brief that the roadblock was, for practical purposes, a general search for contraband or criminal activity. He rests his argument on three different documents: (1) Major Crisp's written instructions directing participating officers to detain motorists if they observe "any articulable sign of intoxication or impairment or if the officer observes contraband"; (2) § 1.1 of the division commander's order, which purports to impose a "zero tolerance" enforcement policy; and (3) the duty assignment sheet given to individual officers, which authorizes the initial screening officer to divert a vehicle to secondary screening if there is "[a]ny observation of a crime that would amount to a felony or narcotic law violation."

In *Commonwealth* v. *Rodriguez,* 430 Mass. 577, 584-585 (2000), we held that "roadblocks for the purpose of searching for evidence of drug trafficking and other contraband violate art. 14" of the Massachusetts Declaration of Rights. We noted that "[r]oadblocks established for the purpose of interdicting

[3] We reject the claim asserted by the defendant that the single justice should have denied the Commonwealth's application because it was filed twenty-four days after the judge filed written findings concerning the defendant's motion to suppress. Our rules of appellate procedure provide that the time for filing an appeal may be enlarged for "good cause shown." Mass. R. A. P. 14 (b), as amended, 378 Mass. 939 (1979). Whether to excuse the Commonwealth for its late filing was a matter within the discretion of the single justice.

drugs and other contraband essentially give to the police the same powers with respect to individuals in their automobiles as the writs of assistance granted to the British officials with respect to individuals in their homes." *Id.* at 585. Each of the documents on which the defendant relies to argue that the purpose of this roadblock was to search for evidence of drug trafficking and other contraband, however, plainly reflects that the purpose of the roadblock was to check sobriety. Indeed, the duty assignment sheet expressly declared that the primary goal of the sobriety checkpoint was "to apprehend alcohol violators and deter drunk driving." We do not conclude that a sobriety checkpoint becomes a roadblock for the purpose of searching for evidence of drug trafficking and other contraband simply because the initial screening officers are directed to divert a vehicle to secondary screening when their observations provide reasonable suspicion, based on articulable facts, that an occupant of the vehicle is engaged in the commission of a felony or a violation of the narcotics law. Nothing in our cases suggests that an officer participating in an initial lawful encounter with a driver must, or even should, turn a blind eye to contraband or evidence in plain view that provides reasonable suspicion that a crime has been, or is being, committed. See, e.g., *Commonwealth* v. *Sergienko*, 399 Mass. 291, 294-295 (1987) (officer allowed to observe objects in plain view when officer was lawfully in position to observe).[4]

We conclude that the Commonwealth has satisfied its burden of establishing that the roadblock involved in this case was governed by lawful guidelines. See *Commonwealth* v. *Murphy*, *ante* 318, 328-329 (2009). See also *Commonwealth* v. *McGeoghegan*, 389 Mass. 137, 144 (1983), citing *Commonwealth* v. *Leone*, 386 Mass. 329, 336 (1982), and *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974).

---

[4]The defendant also contends in his brief that TRF-15 allows an impermissible amount of discretion to the initial screening officers to decide what questions to ask of a motorist stopped at a sobriety checkpoint. Although it appears that the defendant did not raise this issue below, we considered this issue in *Commonwealth* v. *Murphy*, *ante* 318, 326-327 (2009), and reach the same conclusion here as in that case: as a result of the orders and instructions in the operations plan that governed this sobriety checkpoint and supplemented the guidance provided by TRF-15, the discretion provided to the initial screening officers in greeting motorists was appropriately limited to pass constitutional muster.

*Conclusion.* The order allowing the defendant's motion to suppress is reversed and the case is remanded to the District Court for further proceedings consistent with this opinion.[5]

*So ordered.*

---

[5]Although it appears that the defendant asserted in his motion to suppress that the manner in which the Bridgewater roadblock on October 14-15 was executed was constitutionally impermissible, he explicitly waived this issue before the judge at the hearing on his motion, resting instead solely on his claim that the guidelines were unconstitutional on their face. We also note that he argued before the judge that the public notification provision in TRF-15 is constitutionally infirm, but because he did not argue that issue before this court, the issue is waived.